IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| V. | * | CRIMINAL NO. CCB-19-0371 |
| JOSHUA I. LANKFORD | * | |

### MEMORANDUM AND ORDER

Currently pending are Defendant's Motion to Reopen Detention Hearing and for Pretrial Release and Memorandum in Support thereof (ECF Nos. 71 and 79-unsealed; ECF No. 73-sealed) ("Motion"), Government's Opposition to Defendant's Motion to Reopen Detention Hearing and for Pretrial Release (ECF No. 76-sealed; ECF No. 82-unsealed) ("Opposition"), and Defendant's Reply to Government's Response to Motion to Reopen Detention Hearing and for Pretrial Release (ECF No. 77, 85). For the reasons stated below, the Motion (ECF Nos. 71, 79) is denied.

A detention hearing was held in this case on August 5, 2019. After both parties were fully heard, I detailed my reasons for issuing a detention order on the record at the hearing and I issued an Order of Detention summarizing those reasons (ECF No. 15). Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened if the "judicial officer finds that information exists that was not known to the movant at the time of the [detention] hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." Defendant argues that the COVID-19 Virus Pandemic constitutes changed circumstances warranting the defendant's release, particularly in light of the fact that he suffers from medical conditions that would put him at greater risk if he contracted the virus. Because concerns relating to the COVID-19 pandemic were not present at the time of the defendant's

original detention hearing, the court agrees that § 3142(f) allows a reopening of the detention decision.

The Court "recognize[s] the unprecedented magnitude of the COVID-19 pandemic" and acknowledges that it can constitute new information warranting a reconsideration of a detention order.  United States v. Martin, Crim. No. PWG-19-140-13, ECF No. 209 at  4 (D. Md. Mar. 17, 2020).   Notwithstanding these circumstances, however, the decision whether to release an individual pending trial still requires an individualized assessment of the factors identified in the Bail Reform Act, 18 U.S.C. § 3142(g).  Id. at 5.  In that regard, I have reviewed the bases for my detention order, and I have reweighed the factors under the Bail Reform Act in light of the current public health emergency, the current COVID-19 situation at Chesapeake Detention Facility ("CDF") where the defendant is being held,  the defendant's existing medical condition, and the defendant's proposed conditions of release. The record in this case regarding the offenses charged and the defendant's background compel me to conclude that conditions of release cannot be fashioned to address community safety, notwithstanding the potential risk of exposure to the virus that the defendant faces while detained.  The court fully analyzed  the § 3142(g) factors at defendant's detention hearing.  As noted in the court's detention order, and detailed on the record at the hearing both by the government and the court, an analysis of these factors overwhelmingly supported a finding that detention was appropriate.

At the time of the detention hearing, the defendant was charged with Conspiracy to Commit Sex Trafficking in violation of 18 U.S.C.  § 1594(c);  Sex Trafficking in violation of 18 U.S.C. §1591(a), (b)(1); Conspiracy to Commit Kidnapping and Kidnapping in violation of 18

U.S.C. §1201(a) and (c).[1]  The maximum penalty is life imprisonment.  The government was entitled to the presumption in favor of detention pursuant to 18 U.S.C. §3142(e).  The evidence supporting the charges against the defendant is substantial.   The government provided a detailed factual proffer at the detention hearing, and has provided an elaborate description of the offense in its Opposition.  (ECF No. 82 at 3-6, 8).  The defendant is alleged to have played a leadership role in enticing the victim ("V") to perform commercial sex acts under the direction, and for the financial gain, of the defendant and his co-conspirators (collectively, "defendants").  After a dispute arose between the defendants and V regarding the performance and payment for a sex act, the defendants took V to a remote location in Maryland "for purposes of physically assaulting V as a punishment and to maintain her compliance."   (ECF No. 82 at 5).  A belt was placed around V's neck to prevent her from escaping and, upon arrival at the location, V was beaten with closed fists about her face, torso, and neck and was struck on her unclothed buttocks with the belt.  She was then transported back to a hotel in Delaware where she was further abused until V was able to call 911.  The Delaware State Police troopers responded and found V and the co-conspirators except for the defendant in the hotel room.  The defendant was arrested the next day at his home in Federalsburg, Maryland, which is the same residence where he proposes to live if released.

      The defendant's cell phone, which was seized at the time of his arrest, as well as cell phones of his co-conspirators, were searched and the analysis demonstrated that the bulk of the contact among the defendants pertained to the maintenance and advertisement of V for

---

[1] On March 12, 2020, a Grand Jury for the District of Maryland returned a ten (10) count Superseding Indictment against the defendant, adding multiple counts of Coercion and Enticement, in violation of 18 U.S.C. §2422(a), Transporting an Individual in Interstate Commerce to Engage in Prostitution, in violation of 18 U.S.C. §2421, and Interstate Travel to Promote Enterprise Involving Prostitution Offense, in violation of 18 U.S.C. §1952(a)(3).

commercial sex.  (Id. at 6).   In addition, the defendant is alleged to have made incriminating statements after his arrest acknowledging that he was in the car when V had a belt around her neck. (Id. at 8).    In sum, the evidence proffered by the government established that the defendant played a significant role in an extremely violent offense.  The defendant contests the facts proffered by the government, arguing that there are conflicting accounts as to the defendant's leadership role in the conspiracy and his commission of any acts of violence or coercion against V.  (ECF No.77 at 7-10).   While it appears that the government and the defense will present different versions of the facts as this case progresses, the evidence presented to the court at this stage is very strong and the violent nature and circumstances of this offense supports, rather than rebuts, the presumption in favor of detention on the basis of danger to the community.

The history and characteristics of the defendant also support the detention order.  The defendant was convicted of handgun on person and received a Probation Before Judgment in 2008.  In 2010, he was convicted of causing life threatening injury by vehicle (as part of a negligent homicide by auto/boat case).  While on probation, in 2013, the defendant was convicted of marijuana possession, and was placed on one year probation.  While on probation, the defendant was convicted of Assault-Second Degree, and was sentenced to Probation Before Judgment.  The defendant was convicted of Violation of Ex Parte/Protective Order in 2016 and was sentenced to 30 days incarceration and one year probation.  In addition to these convictions,  the defendant has a history of non-compliance with community supervision in that he was arrested or charged with new offenses while on supervision.   Based upon all of the above, the court concluded at the time of the detention hearing that: 1) the defendants failed to rebut the presumption under §3142(e) as to danger;  and (2) by clear and convincing evidence

pursuant to § 3142, there were no conditions of release which would reasonably assure the community's safety. (ECF No. 15).

In his Motion, defendant argues that: 1) he should be released to avoid contracting the COVID-19 virus; 2) he is at a greater risk of an adverse outcome in light of his preexisting medical conditions; and 3) he can be effectively monitored in the community at his sister's home on the Eastern Shore where he will be able to obtain necessary mental health treatment. (ECF Nos. 79 at 1-2). As this court has previously noted, the public health emergency created by COVID-19 is a significant concern for all those in detention facilities during this global pandemic. The court is concerned for the defendant, and for all others both inside and outside of the detention facility. These concerns, however, do not constitute a basis upon which to release an individual who this court has determined poses a threat to the safety of the community unless the court concludes that the conditions at the detention facility coupled with the defendant's medical conditions warrant a reconsideration of that conclusion.

As to procedures in place at CDF, the government has proffered that comprehensive precautionary measures have been instituted at CDF to avoid a COVID-19 outbreak. (ECF No. 82 at 9-15). Defendant takes issues with the government's proffer, and notes that there are deficiencies at CDF in terms of compliance with CDC Guidance. (ECF No.77-1 at 1-6). In essence, the defendant argues that the conditions at CDF are "ripe for the rapid spread of the virus" because that it is what happened at an unrelated detention facility, the D.C. Jail complex. (ECF No. 79-1 at 9). The defendant asserts that the court should not rely on the information offered by the government because "the government has repeatedly proven that it cannot be trusted to offer an accurate account" in that it previously provided inaccurate

information regarding precautionary procedures in place at the D.C. Jail complex. (ECF No. 77 at 1).

The court rejects the defendant's blanket proposition that the government cannot be trusted to give accurate information as well as the notion that the court should revisit its detention decision based on the speculative risk that there will be a COVID-19 outbreak at CDF.  Moreover, the court finds wholly unpersuasive the argument that the court can draw any conclusions based on a comparison of two different facilities that are supervised in two different jurisdictions by two different agencies. Rather, the court's focus in on the current COVID-19 situation at CDF.  As noted in the government's Opposition, there have been no documented cases of detainees having contracted COVID-19 while already housed at CDF and the only documented case of a COVID-19 positive detainee was an individual who tested positive during intake and was placed into quarantine.  Further, there were three reported cases of CDF staff testing positive for the virus, but no evidence that the illness had spread to any other staff or inmates.  (ECF No. 82 at 6).  Based upon the record currently before the court, it appears that whatever measures have been implemented at CDF have been effective.  In sum, the court cannot conclude that the conditions at CDF or its protocols are so inadequate as to warrant defendant's release or that the defendant's speculative claims can be credited.

Similarly,  the defendant's preexisting medical condition and his mental health issues do not change the analysis.  The defendant has not made any specific argument, let alone factual proffer, as to why his medical condition is not being adequately addressed.  Indeed, the defendant does not claim that he is improperly medicated or that he has been denied treatment for his medical condition.  (ECF No. 77 at 6, n.4).  Consequently, although the court is mindful of the fact that the defendant's medical condition exposes him to an increased risk of

complications if infected with the virus, that fact alone does not support a reconsideration of the defendant's detention order.  As noted by the government, the court has recently denied motions for release where detainees have claimed that they had medical conditions, including the same condition as the defendant, that made them uniquely vulnerable to complications if they contract COVID-19, but they have not established that those conditions warrant a reconsideration of an order of detention.  (ECF No. 82 at 18-19).  With respect to the defendant's mental health issues, the defendant argues that although he is being provided with mental health treatment, his condition is not improving and release is appropriate so that he can receive care in the community.  (ECF No. 77 at 10).  As noted by the government, it is clear, based on a review of the defendant's medical records, that the issue is not a lack of availability of mental health services, but rather non-treatment based issues.  (ECF No. 76 at 16-17).  In brief, there is no reason to believe that the defendant's mental health issues will improve, as he suggests, by receiving care in the community.  Indeed, one might observe that the defendant's mental health issues may increase the concern regarding the defendant's danger to the community if released.  In any event,  the defendant's mental health issues do not persuade the court that reconsideration of the detention decision is appropriate.

     The court has also considered the defendant's proposed conditions of release (ECF No. 73 at 18), and notes that those  proposed conditions of release are the very same set of conditions proposed at defendant's original hearing and which include residing at the same location where the defendant lived at the time of the instant offense.  The court concludes now, as it did at the detention hearing in this case, that defendant's proposed conditions of release are inadequate to address community safety concerns.  Notably, the fact that defendant has a history of poor compliance with community supervision undercuts the argument that he will comply with release

conditions.  As the court found at the detention hearing, there are no conditions or combination of conditions which will reasonably assure the community's safety.  (ECF No. 15).

In conclusion, the defendant has not presented any new information that warrants a reconsideration of my Order of Detention in accordance with 18 U.S.C. § 3142(f).[2]  Based upon the foregoing, the court concludes that the circumstances proffered by the defendant do not constitute a basis upon which to release an individual who the court has determined poses a threat to the safety of the community. Accordingly, Defendant's Motion (ECF No. 71) is denied.

Date:   June 5, 2020  _____/s/_____
                                      Beth P. Gesner
                                      Chief United States Magistrate Judge

---

[2] Although the defendant's Motion does not seek the defendant's temporary release pursuant to 18 U.S.C. §3142(i), the court has considered release under that section in accordance with applicable law, and has determined that the defendant has not satisfied the "compelling reason" standard warranting his temporary release pursuant to §3142(i). The court notes that it has broadly employed the analysis suggested by the Fourth Circuit in United States v. Creek, No. 20-4251, Doc. 18 (4th Cir. Apr. 15, 2020) in considering COVID-19 based requests for temporary release under §3142(i), although the Creek order did not explicitly apply this analysis to other provisions of the Bail Reform Act. See United States v. Gallagher, SAG-19-479 (D. Md.), ECF No. 45 at 6-7.

     The court also rejects the defendant's argument that his Sixth Amendment right to counsel supports his release because he needs to review the discovery with counsel in person, and that is not possible at CDF during the pandemic. (ECF No. 79-1 at 16-17).  As noted by the government, employing the analysis suggested by §3142(i), the defendant has not sustained his burden of establishing that his release is necessary for the preparation of his defense, (ECF No. 82 at 22-26), particularly in light of the suspension of jury trial proceedings at present.