IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

    v.

JOSHUA I. LANKFORD,

    *Defendant.*

Case No.: 1:19-cr-00371-JRR

## <u>MEMORANDUM AND ORDER</u>

Pending now before the court is *pro se* Defendant Joshua I. Lankford's "Rule 60(b)(6)/Actually Innocence" Motion at ECF No. 279 (the "Motion") in which Lankford asks this court to vacate his conviction for kidnapping on the grounds that he is actually innocent.[1]  (ECF No. 279.)

Lankford brings his Motion under Federal Rule of Civil Procedure 60(b)(6), which permits a court to "relieve a party or its legal representative from a final judgment, order, or proceeding," for, relevant here, "any other reason that justifies relief."  FED. R. CIV. P. 60(b)(6).  Importantly, however, "[t]he Federal Rules of Civil Procedure do not provide a vehicle by which [a petitioner] may challenge his criminal judgment."[2]  *United States v. Grapes*, 408 F. App'x 766, 767 (4th Cir. 2011).  Accordingly, where Lankford seeks to vacate his sentence, the court analyzes his argument pursuant to 28 U.S.C. § 2255.

---

[1] In the alternative, Lankford argues that his sentence should be reduced to a term of time served "for a non-violent offense."  (ECF No. 279 at p. 3.)  Because his argument is premised on the assumption that he is actually innocent, his request similarly fails for the reasons set forth herein.  Further, Lankford's Motion fails to address the standard for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), including that the relevant 18 U.S.C. § 3553(a) factors favor release. *See United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023) (discussing the standard).  The court therefore does not reach Lankford's alternative request.

[2] As the Honorable Ellen L. Hollander of this court has explained: "To be sure, . . . the Supreme Court has recognized that 'Rule 60(b) has an unquestionably valid role to play in habeas cases,'" however, such facts underlying same are not at issue here.  *See United States v. Carrington*, No. CR ELH-13-151, 2022 WL 888436, at *5–6 (D. Md. Mar. 25, 2022) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005)).

## I.      Background

On February 8, 2022, Lankford entered an agreement with the Government to plead guilty

to one count of kidnapping in violation of 18 U.S.C. § 1201(a), wherein he admitted that he "is, in

fact, guilty of the offense." (ECF No. 213.)  In the Stipulation of Facts attached to his Plea

Agreement, Lankford stipulated to the truth of the following facts:

> Beginning at a date unknown, but no later than on or about October 25, 2018, and continuing through October 30, 2018, the Defendant conspired with Lakeya Aldridge [], Kevonne Murphy [], and David Goodwin [] to commit sex trafficking by force, fraud or coercion and to commit kidnapping as described herein. Throughout the course of the scheme, of which the Defendant was the organizer and leader, the Defendant knowingly induced Victim 1 to travel in interstate commerce (from Maryland to Delaware) to engage in prostitution, and knowingly transported Victim 1 in interstate commerce. On multiple occasions, the Defendant also used a facility of interstate commerce with the intent to promote the business enterprise involving prostitution.

> .          .          .

> On or about October 29, 2018, Aldridge, Murphy, and Goodwin drove Victim 1 back to Maryland where she performed commercial sex acts and provided all of the money to the Defendant, Aldridge, Murphy, and/or Goodwin, at their instruction. After one commercial sex act, Victim 1 returned to Aldridge, Murphy, and Goodwin having made $30 for 90-mintues with a client. Aldridge and Murphy yelled at Victim 1, telling her she had not made enough money and was in trouble. Fearing for her safety, Victim 1 unsuccessfully tried to escape by attempting to jump out of Aldridge's moving car. Aldridge removed her belt and Murphy and Goodwin put it around Victim 1's neck to prevent her from escaping. Murphy called the Defendant on his cell phone and advised the Defendant that Victim 1 had tried to escape the vehicle. The Defendant told Aldridge, Murphy, and Goodwin to pick him up at his residence, and stated that he knew where to take Victim 1 in order to punish her.

> Once in the car with his coconspirators and Victim 1, the Defendant told Aldridge, Goodwin, and Murphy, "I know where to go." The Defendant then directed Aldridge to drive to railroad tracks in a very dark and remote location in Federalsburg, Maryland, for the purpose of physically assaulting Victim 1 as punishment for her poor

2

earnings and to maintain her compliance. While parked at the railroad tracks, one or more of the defendants ordered Victim 1 out of the vehicle. The Defendant restrained Victim 1 by holding both her arms while Aldridge struck her in the face, torso, and neck with a closed fist. The Defendant then kicked Victim 1's legs out from under her, so that she dropped to the ground. The Defendant then flipped her over on her stomach and pulled down her pants and underwear. Aldridge then repeatedly struck Victim 1's unclothed buttocks with the belt that had been around Victim 1's neck. The Defendant and his co-conspirators then immediately transported Victim 1 to the Relax Inn in Laurel, Delaware in Aldridge's car. During this car ride back to the Relax Inn in Delaware, the Defendant gripped Aldridge's belt firmly around Victim 1's neck to prevent Victim 1's escape.

(ECF No. 213, Attach. A.) At his plea hearing before the Honorable Catherine C. Blake, Lankford confirmed that the "statement of facts is correct and [he] did what it says in there [he] did." (ECF No. 254 at 12:11–18:14.) He also agreed that he was guilty of the kidnapping charge at issue. *Id.* at 18:15–17.

The court entered judgment in Lankford's case on April 13, 2022, sentencing him to a term of imprisonment of 204 months, pursuant to the parties' Rule 11(c)(1)(C) plea agreement, to be followed by a supervised release term of five years. (ECF No. 232.) The following day, Lankford filed an appeal. (ECF No. 234.) "On appeal, Lankford's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there are no meritorious grounds for appeal, but questioning whether the district court erred when it paraphrased a special condition of supervised release when incorporating it from the presentence report." *United States v. Lankford*, No. 22-4234, 2023 WL 4399232, at *1 (4th Cir. July 7, 2023). On appeal, the Fourth Circuit found no error and affirmed the district court's judgment. *Id.*

On October 30, 2025, Lankford filed the instant Motion, seeking to vacate his sentence on the grounds that he is actually innocent because "he was never apart [sic] of a kidnapping nor was

he apart [sic] of a physical assault toward the victim." (ECF No. 279 at p. 2.) The Government opposed the Motion. (ECF No. 281.) Lankford did not reply.

## II. Legal Standard

Under 28 U.S.C. § 2255, a prisoner in federal custody may move to vacate, set aside or correct, a federal prison sentence on the following grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *Hill v. United States*, 368 U.S. 424, 426–27 (1962); *United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018). To prevail on a § 2255 motion, the movant bears the burden to prove the asserted grounds by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

### A. Statute of Limitations and Equitable Tolling

Section 2255 establishes a one-year statutory limitation for filing a motion to vacate a federal criminal sentence. 28 U.S.C. § 2255(f). The limitation period runs from the latest of:

> (1) the date on which the judgment of conviction became final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered though exercise of due diligence.

*Id.* Lankford does not assert that any provision under Section 2255(f)(2)–(4) is applicable. Accordingly, for purposes of Section 2255(f)(1), a judgment of conviction becomes final upon the conclusion of direct review or when the time for seeking such review expires. *Clay v. United States*, 537 U.S. 522, 527 (2003); *see United States v. Smith*, No. CR ELH-18-17, 2020 WL 416242, at *1 (D. Md. July 16, 2020) (same). "A petitioner must generally file a petition of certiorari to the Supreme Court within 90 days of the entry of judgment by a federal court of appeals." *United States v. Cromartie*, No. CR JKB-11-0426, 2023 WL 5671894, at *2 (D. Md. Sept. 1, 2023) (citing SUP. CT. R. 13).

Here, the court entered judgment in Lankford's case on April 8, 2022. (ECF No. 232.) He thereafter filed an appeal. (ECF No. 234.) The Fourth Circuit affirmed the court's judgment on July 7, 2023. (ECF No. 261.) Accordingly, where Lankford did not seek certiorari review, the limitations period began to run 90 days following expiration of the time to seek such review, or October 5, 2023.[3] Lankford did not file the instant Motion until October 30, 2025, over two years after the limitation period began to run. (ECF No. 37.) His Motion is thus untimely.

While Section 2255's statute of limitations is subject to equitable tolling, *see United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004), Lankford does not argue (or show) that he is entitled to such tolling here. To qualify for equitable tolling on a petition for collateral review, a petitioner must demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). It is "available only in 'those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross

---

[3] "For good cause," a petitioner may receive a 60-day extension for filing a petition for certiorari review. SUP. CT. R. 13(5). Even permitting time for such an extension here, Lankford's motion would still be untimely.

injustice would result.'" *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003)).   Lankford fails to show such circumstances exist here.

####    B.    Actual Innocence Claim

Relevant here, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).   However, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).   "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (quoting *Schlup*, 513 U.S. at 324).

Lankford identifies no new reliable evidence here.   His assertions rest on his own unsupported statements that contradict both the stipulated facts set forth in his Plea Agreement and his sworn testimony during his plea colloquy.   Further, his interpretation that the victim at issue previously gave a statement that Lankford played no part in the kidnapping—a statement that seemingly preceded his guilty plea—is neither "new" nor reliable.   Lankford's contention as to this witness's statements directly contradicts the facts to which he stipulated, as set forth above. Contrary to Lankford's assertion, as explained above, the facts to which he stipulated in his Plea Agreement support that he is guilty of the charged offense, and (outside of his own unsupported assertions) Lankford does not provide any new evidence that such facts are not true.

Based on the foregoing, Lankford's Motion is untimely, and he fails to demonstrate a basis for excusing the untimely filing. Further, for these same reasons, Lankford's claim of actual innocence also fails; he fails to show his sentence is unlawful on a specified ground set forth in Section 2255. The Motion will therefore be denied.

## III.   Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If the court denies the petitioner's motion on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "[T]o secure a certificate of appealability on claims that the district court denied pursuant to procedural grounds," a petitioner "must demonstrate both (1)'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee*, 252 F.3d 676, 684–85 (4th Cir. 2001) (quoting *Slack,* 529 U.S. at 484). Lankford does not satisfy the standards set forth above. Accordingly, a certificate of appealability will not issue.

## IV.   Conclusion and Order

Accordingly, based on the foregoing, it is this 2nd day of April 2026,

**ORDERED** that the Motion (ECF No. 279) shall be, and is hereby, **DENIED**; and further it is

**ORDERED** that a Certificate of Appealability **SHALL NOT ISSUE.**

Madam Clerk shall transmit a copy of this memorandum opinion and order to Lankford.


/s/
Julie R. Rubin
United States District Judge